UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-61686-DPG

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

THE MOVIE STUDIO, INC. and
GORDON SCOTT VENTERS,

    Defendants.
_____/

## JOINT PRE-TRIAL STIPULATION

Pursuant to Southern District of Florida Local Rule 16.1(e) and this Court's Order, ECF No. [183], Plaintiff Securities and Exchange Commission ("SEC") and Defendants The Movie Studio, Inc. (hereinafter "TMS" or "The Movie Studio") and Gordon Scott Venters, file the following joint pre-trial stipulation.

**1. A short concise statement of the case by each party in the action.**

(a) **Plaintiff**. The SEC claims the Defendants, The Movie Studio, a company that engages in film production, distribution and content-streaming, and its President and Chief Executive Officer, Gordon Scott Ventures, issued materially misleading press releases regarding The Movie Studio's operations and ownership, production, distribution, and licensing of films, to induce investments in The Movie Studio. From approximately April 2017 to December 2020, Venters acted as an unregistered broker of The Movie Studio's stock and raised at least $1,200,000. The SEC alleges this was in violation of the securities laws.

(b) **Defendants.** The Defendants contend that they never made any false statements and never knowingly made any statements that were materially misleading or that were relied on as

alleged by the SEC in any Press Release or otherwise.

The Defendants allege that all disclosures were legally sufficient and allege that Defendants made every single potential investor aware of the potential risk of investment in MVES. The Defendants contend that they always included explicit disclaimers in their press releases, emails, and on the company's website as well as in the subscription agreements, in person, or on the phone, to potential investors, notifying and advising the recipients of the uncertainty which goes with investments in companies micro-cap companies like The Movie Studio, and informed all the recipients that any investment could result in the loss of their entire investment. Further, the Defendants contend that the Movie Studio provided links to the required financial documents on OTCmarkets.com under symbol: "MVES" or other search engines such as "Yahoo Finance."

The Defendants allege that they only accepted investments from either accredited investors, sophisticated investors, or non-accredited proper investors included in the exemptions or exceptions as either associates, employees, consultants, attorneys, accountants, board members, or strategic partnerships of or with MVES.

During the relevant time frame, from August 2016 to March 2021, there were a total of seventy investors. Defendants allege that Forty-Eight (48) were Accredited investors and twenty-two were non-accredited investors. Defendants allege that of the investors twenty-six were issued shares as compensation for services such as legal consulting, accounting, or were officers/directors and/or strategic partners. Defendants allege these transactions were exempt from registration.

Defendants dispute that the Press Releases contain materially misleading representations concerning operations, ownership, production, distribution, or licensing of films. Defendants also dispute that Mr. Venters acted as a broker dealer.

**2. The basis of federal jurisdiction.**

The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), (e) and 78aa(a).

**3. The pleadings raising the issues.** The pleadings raising the issues are: (1) Plaintiff's Complaint for Injunctive and Other Relief, ECF No. [1]; and (2) Defendants' Amended Answer and Affirmative Defenses ECF No. [100].

**4. A list of all undisposed motions or other matters requiring action by the Court.**

a) Plaintiff's Omnibus Motion in *Limine*, ECF No. [197]

b) Defendants' Motion to Certify September 17, 2024 Order for Interlocutory Appeal, ECF No. [187]

c) Defendants' Omnibus Motion *in Limine*

d) Defendants' Request to Take Judicial Notice

**5. A concise statement of uncontested facts which will require no proof at trial, with reservations, if any.**

a) The Movie Studio is a film production, distribution and content streaming company.

b) The Movie Studio has common stock publicly traded on the Over-the-Counter market and restricted shares in the company are also sold by private offerings.

c) Gordon Scott Venters is President, Chief Executive Officer, and a Director of the Movie Studio. Venters controlled The Movie Studio at all relevant times.

d) During the relevant time period, Venters was not registered as a broker or associated with a registered broker dealer.

e) During the relevant time period, Defendants issued press releases concerning events of significance to The Movie Studio. Venters drafted the press releases himself or paid third parties to draft the press releases on behalf of The Movie Studio. Venters was responsible for the content of press releases and was often quoted in the press releases and listed as the TMS contact.

f) On April 20, 2016, Defendants executed an agreement for TMS to purchase the Arrowhead Film Library (the "Arrowhead Agreement") from the Arrowhead Target Fund Ltd. – In Liquidation as the Seller.

g) The Arrowhead Film Library acquisition was to include twelve films with well-known actors, including: (i) *Johnny Mnemonic* starring Keanu Reeves, (ii) *Never Talk to Strangers* starring Antonio Banderas, (iii) *A Shot at Glory* starring Robert Duvall, (iv) *I'll Sleep When I'm Dead* starring Clive Owens, (v) *Red Riding Hood* starring Henry Cavill, (vi) *Stander*, (vii) *No Good Deed* starring Samuel L. Jackson, (viii) *Popstar* starring Aaron Carter, and (ix) *Supercross*.

h) On August 16, 2016, Defendants issued a press release drafted by Venters entitled, "The Movie Studio to Acquire 12 Major Motion Pictures," that announced TMS' execution of the Arrowhead Agreement and stated, "Based upon information provided by Seven Arts Entertainment, Inc., n/k/a Wireless Connect, Inc., on March 31st 2009, The Salter Group [an independent advisory firm] valued the Arrowhead Library between $2,500,000 - $3,300,000." The press release also stated, TMS "expects to begin monetizing this acquisition in the 4th quarter of 2016."

i) In or around the summer of 2016, Venters had a TMS employee create a marketing flyer (the "Arrowhead Flyer"), which contained images of movie posters from some of the films in the Arrowhead Film Library and listed it as "A Film Library of The Movie Studio A Publicly Traded Company."

j) TMS never completed the acquisition of the Arrowhead Library.

k) In a March 28, 2018, press release, TMS described *Cause and Effect* and *Pegasus* as "2018 Upcoming Movies."

l) In its November 19, 2018, Form 1-A/A for its offering pursuant to Regulation A, which was signed by Venters and filed with the SEC, TMS stated that TMS "has its own studio facility that is used to make films, which is handled by the production company" and that:

> Most of the companies in the entertainment industry have never own[ed] their own studios but have rented space from other companies. There are also independently owned studio facilities, which have never produced a motion picture of their own because they are not entertainment companies or motion picture companies – they are companies who sell only studio space.

m) During the relevant time period, TMS owned no more than 18 films.

n) On February 7, 2019, EmergingGrowth.com, which TMS authorized to issue press releases on its behalf, issued another press release regarding *Cause and Effect*, *Pegasus*, and a third movie, *The Last Warhead*, now describing those movies as a "Three Picture Package for 2019," with Venters quoted in the press release and stating how the three movies "round[ed] out [TMS'] proposed production slate for 2019."

o) On December 21, 2020, TMS published its Annual Report for the Year Ended June 30, 2020, on OTC. In that annual report, TMS first disclosed that it would not be completing the acquisition of the Arrowhead Film Library, claiming that it learned in June 2020 that the library had been sold to another party.

p) In a March 18, 2021, press release, TMS claimed to "Utilize[] Blockchain Technology for Licensing of Motion Picture in Spain Through 2027," with Venters quoted as stating:

> Establishing worldwide distribution agreements for our current library of new and aggregated revenue-shared titles through our blockchain application is a fundamental cornerstone of our proposed reverse engineering of future revenue-share aggregated titles that, when completed, could add significant economic scalability to the Company's revenue model.

q) On the day that the March 18, 2021, press release was issued, TMS' stock opened at $0.033/share, surged up to $0.1653/share (approximately a 500% increase), before closing at $0.047/share (approximately a 142% increase).

r) Since at least April 2017, TMS and Venters offered and sold investors restricted stock purportedly pursuant to either Rule 504 or Rule 506 of Regulation D of the Securities Act. TMS, however, did not file a Form D, "Notice of Exempt Offering of Securities," with the Commission until May 2024.

**6. A statement in reasonable detail of issues of fact which remain to be litigated at trial.**

a) Whether Venters acted as a "broker" under Section 15(a) of the Exchange Act.

b) Whether Venters violated Section 15(a) of the Exchange Act.

c) Whether Venters sold any securities on account of others.

d) Whether Defendants made material misrepresentations and/or omissions regarding their ownership of the Arrowhead Library, and the value of the Arrowhead library.

e) Whether Defendants made material misrepresentations and/or omissions regarding the number of films TMS owned.

f) Whether Defendants made material misrepresentations and/or omissions regarding the films TMS was producing and developing.

g) Whether Defendants made material misrepresentations and/or omissions regarding TMS owning a film studio.

h)  Whether Defendants made material misrepresentations and/or omissions regarding TMS's distribution and licensing of films.

i)  Whether Defendants made material misrepresentations and/or omissions regarding TMS's use of blockchain technology.

j)  Whether Defendants made material misrepresentations and/or omissions regarding how investors' funds would be used.

k)  Whether Defendants violated Section 17(a) of the Securities Act.

l)  Whether Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

**7. A concise statement of issues of law on which there is agreement.**

Section 15(a)(1) of the Exchange Act makes it unlawful for a "broker" to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless such broker is registered with the SEC.

"A broker is any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)).

In evaluating whether someone is a "broker," courts consider several nonexclusive factors, including "whether the person: 1) actively solicited investors; 2) advised investors as to the merits of an investment; 3) acted with a certain regularity of participation in securities transactions; and 4) received commissions or transaction-based compensation. *SEC v. Walker*, No. 20-cv-62564, 2021 WL 5088854, at *2 (S.D. Fla. Aug. 16, 2021); *SEC v. Caputo*, No. 22-CV-61693-JEM, 2023 WL 3740926, at *3 (S.D. Fla. May 17, 2023). These factors are not exclusive, and not all of them, (or any number of them) must be satisfied for a person to be a broker. *See SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill. 2010).

The SEC must establish the following to show that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5: "(1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." *S.E.C. v. Goble*, 682 F.3d 934, 942-43 (11th Cir. 2012) (quoting *S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007)). Similarly, the SEC must prove the following to show that Defendants violated Section 17(a)(1) of the Securities Act: "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." *Merch. Cap.*, 483 F.3d at 766 (citing *Aaron v. SEC*, 446 U.S. 680, 697 (1980)). The only difference concerns second element – "*in the offer* or sale of securities" for Section 17(a)(1), and "*in connection with the purchase* or sale of securities" for Section 10(b) and Rule 10b-5.

To show that Defendants violated Section 17(a)(2) or Section 17(a)(3), the SEC must show (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence. Thus, the first two elements are the same as the first two elements of a Section 17(a)(1) claim, but unlike Section17(a)(1) – which requires scienter – Sections17(a)(2) and 17(a)(3) only require negligence.

**8.  A concise statement of issues of law which remain for determination by the Court.**

The Court will have to determine the issues of law governing instructions to the jury and the verdict form.

**9.  Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including the basis of all objections to each document, electronically stored information and things.**

Plaintiff's exhibit list and the Defendants' exhibit list will be filed on or before December 6, 2024, per agreement and the Court's approved extension. [ECF No. 190].

**10.  Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to present and those whom the party may call if the need arises.  Witnesses whose testimony is expected to be presented by means of a deposition shall be so designated.  Impeachment witnesses need not be listed.**

Plaintiff's witness list is attached as Exhibit A and the Defendants' witness list is attached as Exhibit B.

**11.  Estimated trial time.**

The parties estimate trial in this matter will last six to 10 days.

November 25, 2024                             Respectfully submitted,

By: *s/ Alise Johnson*
Alise Johnson, Esq.
Senior Trial Counsel
Fla. Bar No. 0003270
Direct Dial: (305) 982-6385
Email: johnsonali@sec.gov
Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154


By: *s/ Inger Garcia*
Inger M. Garcia, Esq.
Fla. Bar No. 0106917
Florida Litigation Group, P.A.
4839 Volunteer Road, #514
Davie, Florida  33330
Email: attorney@floridapotlawfirm.com
*Counsel for Gordon Scott Venters and The Movie Studio, Inc.*