UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-CV-61686-GAYLES/STRAUSS

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

v.

THE MOVIE STUDIO, INC. and
GORDON SCOTT VENTERS,

                Defendants.
_____/

**CORRECTED DEFENDANTS' MOTION FOR RECONSIDERATION OF DE 156 REPORT AND ORDER OF MAGISTRATE ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND THE RESULTING ORDER DE 185 AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Come now the Defendants, The Movie Studio, Inc. and Gordon Scott Venters, by and through the undersigned counsel, and move the Court for reconsideration of the grant of summary judgment to the Plaintiff, Securities and Exchange Commission, on Count 1 of the Complaint.[1] In support of their motion, Defendants show unto the Court as follows:

    1.    In Count 1 of the Complaint, Plaintiff sued the Defendants for violations of 5(a) and 5(c) of the Securities Act.

    2.    A claim under section 5(c) of the Securities Act is described as follows:

<u>Absent an exemption</u>, § 5 of the Securities Act prohibits any person from selling or offering to sell a security in interstate commerce unless a registration statement has been filed with the SEC. See 15 U.S.C. §§ 77e(a), 77e(c); *SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999). To establish a violation of this section, the SEC must show that (1) securities were offered or sold for which no registration statement was filed or in effect; (2) the offering or sale was made

---

[1] "Grant of summary judgment" means the portion of Magistrate Jared Strauss' Report and Recommendation (DE 156) addressed to Count 1 and the order of this Honorable Court affirming and adopting same. (DE 185).

1

> through the means or instruments of transportation or communication in interstate commerce or the mails; and (3) defendants, directly or indirectly, offered or sold the securities. *Friendly Power Co.*, 49 F. Supp. 2d at 1367 (citing *SEC v. Continental Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972)). Neither negligence nor scienter is an element of the prima facie case. *Id.*

*SEC v. Levin*, 2013 U.S. Dist. LEXIS 146702, *48-49 (S.D. Fla. 2013) (emphasis added).

3.   In this motion, Defendants will demonstrate the existence of questions of material fact regarding the applicability of one or more exemptions pursuant to, *e.g.*, Rules 504(b) and 504(c), which render the grant of summary judgment on Count 1 legally unsupportable.

4.   Fed. R. Civ. P. 60(b) gives the trial court the authority to entertain a motion for reconsideration of an order granting summary judgment within one year of the order. *See Cover v. Walmart Stores, Inc.*, 1993 U.S. Dist. LEXIS 5130 (M.D. Fla. 1993). Further,

> A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986); see also *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).

*Id.*

5.   A mistake by a party or its attorney may serve as the basis for a motion for reconsideration:

> In this circuit, a motion for reconsideration may be brought on the basis of judicial mistakes, as well as mistakes of a party o[r] his counsel. *Liberty Mutual Insurance Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982). However, a motion for reconsideration that presents no arguments that have not already been raised in opposition to summary judgment should be denied. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); see *Bronson v. Swinney*, 648 F. Supp. 1094, 1102-03 (D. Nev. 1986).

*Id.*

6.	This motion is brought on the basis of mistakes of counsel involving misunderstanding and/or misconception of the Defendants' evidence regarding Count 1, and a mistake by the Defendants in calculating the number of non-accredited investors during the relevant period, as further detailed below and in the accompanying Affidavit of Gordon Scott Venters.

7.	This motion raises arguments which Defendants did not previously assert, to wit: arguments concerning the applicability and/or availability of exemptions to the registration requirement. While the Defendants did, in a regrettably disjointed manner, attempt to raise issues regarding the Rule 504, 506(b), section 4(a)(2) of the Securities Act and Rule 701 (17 C.F.R. §230) exemptions, these arguments were, quite frankly, confused.  Criticism of counsel's attempt to present the Defendants' entitlement to the exemptions is included in the Report and Recommendation. (DE 156).  Frankly, counsel did not recognize the significance of evidence in the possession of the Defendants which strongly supports Defendants' qualification for one or more exemptions.

8.	In the last week of November, and in the process of preparing for trial it was discovered that the allegation in the Complaint that Defendants "raised at least $1,200,000 from at least 70 investors" between April of 2017 and December of 2020 is inaccurate. The number and type of investors is inaccurate in the complaint and the responses. This caused the undersigned to inquire of her clients as to the true number of investors and the amount actually raised during the designated time period, as opposed to the total number of investors overall.  In response, the Defendants provided counsel with substantial evidence that, for one thing, during the time in question the Defendants only received investments from 32 non-accredited investors.  The basis for this conclusion is elucidated and documented in the Affidavit of Gordon Venters filed

concurrently herewith, as further discussed *infra*. New material and argument are included in this motion and in said affidavit.

9. *SEC v. Levin*, 849 F.3d 995 (11th Cir. 2013) appears to be the leading case from the Eleventh Circuit on exemptions from registration. As the *Levin* court explains:

> Section 5 of the Securities Act prohibits the use of any means of interstate commerce or the mails to offer to sell or offer to buy any security without having first filed a registration statement with the SEC as to such security. 15 U.S.C. § 77e(a), (c) (2012). To establish a prima facie case for a Section 5 violation, the SEC must prove three elements: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972). The Securities Act does exempt from its application certain types of securities and securities transactions "where there is no practical need for its application or where the benefits are too remote." *Id.* These exemptions must be narrowly viewed because, as remedial legislation, the Securities Act is entitled to a broad construction. *Id.*
>
> The Code of Federal Regulations Rule 506 ("Rule 506") implements the statutory exemption involving securities that are not public offerings, such as the ones at issue here. See 17 C.F.R. § 230.506 (2016); see also 15 U.S.C. § 77d(a)(2) (2012) (providing that Section 4(2) of the Securities Act exempts from registration "transactions by an issuer not involving any public offering"). The private offering exemptions are known as Regulation D, which is a series of rules that establish three separate, distinct private offering exemptions from the registration requirements of the Securities Act. **To meet the conditions of Rule 506, an offer or sale must satisfy the terms of Rules 501 and 502, and the issuer must reasonably believe that there are no more than 35 purchasers of securities.** 17 C.F.R. § 230.506(b)(1), (2)(i). Accredited investors are not counted toward the 35. *Id.* § 230.501(e). An accredited investor is any person "whose individual net worth . . . exceeds $1,000,000." *Id.* § 230.501(a)(5) & (6). Rule 502 sets out certain requirements for offerings made under Rule 506(b), including a provision requiring certain information be provided to investors before the sale of the securities and a provision limiting the manner by which the issuer can sell the securities. *Id.* § 230.502(b), (c), and (d).
>
> To obtain the exemption, there is another condition that must be satisfied, and it involves the nature of the purchasers. Rule 506(b)(2)(ii) states that:
>
> Each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective

4

> investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description.
>
> 17 C.F.R. § 230.506(b)(2)(ii). The issuer is to take reasonable steps to verify that a purchaser of a security sold in an offering under section (c) is an accredited investor. *Id.* § 230.506(c). The offeror can verify a purchaser's accredited status on the basis of income or net worth. *See id.* § 230.506(c)(2)(ii)(A) & (B).
>
> 17 C.F.R. § 230.508 provides a safe harbor in private offering actions when there are insignificant deviations from 17 C.F.R. § 230.506(b). This provision states that a deviation from a term, condition, or requirement of 17 C.F.R. § 230.504, § 230.505 or § 230.506 will not result in the loss of the exemption from the requirements of § 5 of the Securities Act for any offer or sale to a particular individual or entity, if the person relying on the exemption satisfies three factors. 17 C.F.R. § 230.508(a). The first two factors tie the deviation to the purchasers: the failure to comply with a term, condition, or requirement of 17 C.F.R. § 230.506 must not: (1) pertain to a term, condition, or requirement directly intended to protect that particular individual or entity; and (2) must be insignificant with respect to the offering as a whole, provided that any failure to comply with certain specified terms shall be deemed to be significant to the offering as a whole. The third factor requires a good-faith and reasonable attempt to comply with all 17 C.F.R. § 230.504, 230.505, and 230.506 requirements.

*SEC v. Levin*, 849 F.3d 998-1001 (out of sequence) (emphasis added).

9. As required by Rule 506, the Defendants reasonably believed (and still believe) that they did not sell securities to more than 35 nonaccredited investors. In his affidavit, in paragraphs 9-11, Mr. Venters explains his understanding about the types of investors which count toward the permissible 35. Accredited investors obviously are not counted, and, pursuant to Rule 144, those persons who are insiders and/or who exchange services, rather than money, for their securities, do not count toward the 35-investor limit. They qualify as accredited investors. *See* sec.gov/resources-small-businesses/exempt-offerings/frequently-asked-questions-about-exempt-offerings Furthermore, 17 CFR §230.501(a)(11) provides that "accredited investor" includes "persons who are a director, executive officer, or general partner of the company selling the securities, or any director, executive officer, or general partner of a general partner of th[e] company."

5

10. In addition, securities issued to consultants and advisors are exempt from registration:

> 17 CFR § 230.701 Exemption for offers and sales of securities pursuant to certain compensatory benefit plans and contracts relating to compensation.
> Preliminary Notes:
> 1. This section relates to transactions exempted from the registration requirements of section 5 of the Act (15 U.S.C. 77e). These transactions are not exempt from the antifraud, civil liability, or other provisions of the federal securities laws. Issuers and persons acting on their behalf have an obligation to provide investors with disclosure adequate to satisfy the antifraud provisions of the federal securities laws.
> 2. In addition to complying with this section, the issuer also must comply with any applicable state law relating to the offer and sale of securities.
> 3. An issuer that attempts to comply with this section, but fails to do so, may claim any other exemption that is available.
> 4. This section is available only to the issuer of the securities. Affiliates of the issuer may not use this section to offer or sell securities. This section also does not cover resales of securities by any person. This section provides an exemption only for the transactions in which the securities are offered or sold by the issuer, not for the securities themselves.
> 5. The purpose of this section is to provide an exemption from the registration requirements of the Act for securities issued in compensatory circumstances. This section is not available for plans or schemes to circumvent this purpose, such as to raise capital. This section also is not available to exempt any transaction that is in technical compliance with this section but is part of a plan or scheme to evade the registration provisions of the Act. In any of these cases, registration under the Act is required unless another exemption is available.
> (a) Exemption. Offers and sales made in compliance with all of the conditions of this section are exempt from section 5 of the Act (15 U.S.C. 77e).
> (b) Issuers eligible to use this section—(1) General. This section is available to any issuer that is not subject to the reporting requirements of section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. 78m or 78o(d)) and is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.).
> (2) Issuers that become subject to reporting. If an issuer becomes subject to the reporting requirements of section 13 or 15(d) of the Exchange Act (15 U.S.C. 78m or 78o(d)) after it has made offers complying with this section, the issuer may nevertheless rely on this section to sell the securities previously offered to the persons to whom those offers were made.
> (3) Guarantees by reporting companies. An issuer subject to the reporting requirements of section 13 or 15(d) of the Exchange Act (15 U.S.C. 78m, 78o(d)) may rely on this section if it is merely guaranteeing the payment of a subsidiary's securities that are sold under this section.
> (c) Transactions exempted by this section. This section exempts offers and sales of securities (including plan interests and guarantees pursuant to paragraph (d)(2)(ii)

6

of this section) under a written compensatory benefit plan (or written compensation contract) established by the issuer, its parents, its majority-owned subsidiaries or majority-owned subsidiaries of the issuer's parent, for the participation of their employees, directors, general partners, trustees (where the issuer is a business trust), officers, or consultants and advisors, and their family members who acquire such securities from such persons through gifts or domestic relations orders. This section exempts offers and sales to former employees, directors, general partners, trustees, officers, consultants and advisors only if such persons were employed by or providing services to the issuer at the time the securities were offered. In addition, the term "employee" includes insurance agents who are exclusive agents of the issuer, its subsidiaries or parents, or derive more than 50% of their annual income from those entities.

(1) Special requirements for consultants and advisors. This section is available to consultants and advisors only if:

(i) They are natural persons;

(ii) They provide bona fide services to the issuer, its parents, its majority-owned subsidiaries or majority-owned subsidiaries of the issuer's parent; and

(iii) The services are not in connection with the offer or sale of securities in a capital-raising transaction, and do not directly or indirectly promote or maintain a market for the issuer's securities.

10. After eliminating the accredited investors (including those reasonably believed to be accredited) there were 32 investors in The Movie Studio, Inc. during the relevant period. (*See* Affidavit of Gordon Scott Venters, ¶¶3, 4, 11 and 12). As explained in *Levin* and as set forth *supra,* in addition to there being less than 35 nonaccredited investors, in order to qualify for an exemption under Rule 506, the issuer must also "satisfy the terms of Rule 501 and 502."

11. Before demonstrating to the Court that The Movie Studio, Inc. has satisfied the terms of Rules 501 and 502, a brief aside. Since the order in question is one granting summary judgment, Defendants submit that the standards governing such motions are properly integrated into the Court's framework for reaching a decision on this motion for reconsideration. There, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the

light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997).[2]

12. The issuer, The Movie Studio, Inc., satisfied the terms of Rule 501 because the persons it classified as accredited investors fit within the definitions of that term set forth in said rule.

13. Defendants have also satisfied the terms of Rule 502 (17 C.F.R. §230.502), which, *inter alia*, requires that nonaccredited investors be provided with the issuer's financials. It states:

> (b) Information requirements—(1) When information must be furnished. If the issuer sells securities under § 230.506(b) to any purchaser that is not an accredited investor, the issuer shall furnish the information specified in paragraph (b)(2) of this section to such purchaser a reasonable time prior to sale. The issuer is not required to furnish the specified information to purchasers when it sells securities under § 230.504, or to any accredited investor.

14. Paragraph (b)(2) delineates the "type of information to be furnished":

> (i) If the issuer is not subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, at a reasonable time prior to the sale of securities the issuer shall furnish to the purchaser, to the extent material to an understanding of the issuer, its business and the securities being offered:
>
> (A) Non-financial statement information. If the issuer is eligible to use Regulation A (§ 230.251-263), the same kind of information as would be required in Part II of Form 1-A (§ 239.90 of this chapter). If the issuer is not eligible to use Regulation A, the same kind of information as required in Part I of a registration statement filed under the Securities Act on the form that the issuer would be entitled to use.
>
> (B) Financial statement information—(1) Offerings up to $20,000,000. The financial statement information required by paragraph (b) of Part F/S of Form 1-A. Such financial statement information must be prepared in accordance with generally accepted accounting principles in the United States (US GAAP). If the issuer is a foreign private issuer, such financial statements must be prepared in accordance with either US GAAP or International Financial Reporting Standards (IFRS) as issued by the International Accounting Standards Board (IASB). If the financial statements comply with IFRS, such compliance must be explicitly and unreservedly stated in the notes to the financial statements and if the financial

---

[2] As cited by the Hon. Magistrate Jared Strauss in the R&R. (DE 156).

8

statements are audited, the auditor's report must include an opinion on whether the financial statements comply with IFRS as issued by the IASB.

(2) Offerings over $20,000,000. The financial statement information required by paragraph (c) of Part F/S of Form 1-A (referenced in § 239.90 of this chapter). If the issuer is a foreign private issuer, such financial statements must be prepared in accordance with either US GAAP or IFRS as issued by the IASB. If the financial statements comply with IFRS, such compliance must be explicitly and unreservedly stated in the notes to the financial statements and the auditor's report must include an opinion on whether the financial statements comply with IFRS as issued by the IASB.

(C) If the issuer is a foreign private issuer eligible to use Form 20-F (§ 249.220f of this chapter), the issuer shall disclose the same kind of information required to be included in a registration statement filed under the Act on the form that the issuer would be entitled to use. The financial statements need be certified only to the extent required by paragraph (b)(2)(i) (B) (1), (2) or (3) of this section, as appropriate.

(ii) If the issuer is subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, at a reasonable time prior to the sale of securities the issuer shall furnish to the purchaser the information specified in paragraph (b)(2)(ii)(A) or (B) of this section, and in either event the information specified in paragraph (b)(2)(ii)(C) of this section:

(A) The issuer's annual report to shareholders for the most recent fiscal year, if such annual report meets the requirements of Rules 14a-3 or 14c-3 under the Exchange Act (§ 240.14a-3 or § 240.14c-3 of this chapter), the definitive proxy statement filed in connection with that annual report, and if requested by the purchaser in writing, a copy of the issuer's most recent Form 10-K (§ 249.310 of this chapter) under the Exchange Act.

(B) The information contained in an annual report on Form 10-K (§ 249.310 of this chapter) under the Exchange Act or in a registration statement on Form S-1 (§ 239.11 of this chapter) or S-11 (§ 239.18 of this chapter) under the Act or on Form 10 (§ 249.210 of this chapter) under the Exchange Act, whichever filing is the most recent required to be filed.

(C) The information contained in any reports or documents required to be filed by the issuer under sections 13(a), 14(a), 14(c), and 15(d) of the Exchange Act since the distribution or filing of the report or registration statement specified in paragraphs (b)(2)(ii) (A) or (B), and a brief description of the securities being offered, the use of the proceeds from the offering, and any material changes in the issuer's affairs that are not disclosed in the documents furnished.

(D) If the issuer is a foreign private issuer, the issuer may provide in lieu of the information specified in paragraph (b)(2)(ii) (A) or (B) of this section, the information contained in its most recent filing on Form 20-F or Form F-1 (§ 239.31 of the chapter).

(iii) Exhibits required to be filed with the Commission as part of a registration statement or report, other than an annual report to shareholders or parts of that report incorporated by reference in a Form 10-K report, need not be furnished to each purchaser that is not an accredited investor if the contents of material exhibits are identified and such exhibits are made available to a purchaser, upon his or her written request, a reasonable time before his or her purchase.

(iv) At a reasonable time prior to the sale of securities to any purchaser that is not an accredited investor in a transaction under § 230.506(b), the issuer shall furnish to the purchaser a brief description in writing of any material written information concerning the offering that has been provided by the issuer to any accredited investor but not previously delivered to such unaccredited purchaser. The issuer shall furnish any portion or all of this information to the purchaser, upon his written request a reasonable time prior to his purchase.

(v) The issuer shall also make available to each purchaser at a reasonable time prior to his purchase of securities in a transaction under § 230.506(b) the opportunity to ask questions and receive answers concerning the terms and conditions of the offering and to obtain any additional information which the issuer possesses or can acquire without unreasonable effort or expense that is necessary to verify the accuracy of information furnished under paragraph (b)(2) (i) or (ii) of this section.

15. Defendants acknowledge Magistrate Strauss' analysis concerning Rule 506(b) beginning in the bottom half of p. 9 of DE 156, wherein, citing to *SEC v. GenAudio Inc.*, 32 F.4th 902, 940 (10th Cir. 2022), he wrote: "Among other things, 'the issuer of the security must . . . have a reasonable basis for believing that no more than thirty-five purchasers were not accredited investors, and it must provide an audited balance sheet to any purchaser that it not an accredited investor[,]" While the Honorable Magistrate has correctly quoted *GenAudio,* that decision's characterization of Rule 506(b)'s requirements appears inconsistent with the guidance for issuers appearing on the SEC's official website, SEC.gov.  There, the Securities and Exchange Commission describes issuers' obligation to furnish financial info to nonaccredited investors as follows: "Companies must give non-accredited investors disclosure documents that are generally

10

the same as those used in Regulation A or registered offerings, including financial statements, which *in some cases may need to be certified or audited* by an accountant." (Emphasis added). (*See* Affidavit of Gordon Scott Venters, ¶l; see *also* Exhibit 3 to said Affidavit).

16. While the Defendants have not provided "audited balance sheets" to investors, they have provided them with access to all of The Movie Studio's certified financial statements. Defendants have articulated the basis for their good-faith belief that there were no more than 35 non-accredited investors throughout the accompanying Affidavit of Gordon Scott Venters.

17. Defendants acknowledge Magistrate Strauss' analysis on the bottom half of page 11 of the R&R, including "What Defendants do not do, though, is explain what specific financials were provided to non-accredited investors, or elaborate on how such financials were 'certified.' Nor do they explain how whatever they did provide satisfies 230.502(b)--and thus Rule 506(b)." Defendants have explained what specific financials were provided to non-accredited investors and have elaborated on how such financials were certified in the Affidavit of Gordon Scott Venters and the attachments thereto.

18. Defendants submit that they sufficiently explain how their conduct satisfies 230.502(b) and Rule 506(b) in the preceding paragraphs of this motion.

WHEREFORE, Defendants The Movie Studio, Inc. and Gordon Venters ask that the Court reconsider its grant of summary judgment to the Plaintiff on Count 1 and afford the Defendants such additional relief as may be deemed just and proper.

### Certification of Pre-filing Conference

I certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and the Plaintiff objects to this motion.

Respectfully submitted this 5th day of December 2024.

*/s/Inger M. Garcia, Esq.*
Inger M. Garcia, Esq.
Florida Litigation Group
Counsel for Defendants
7040 Seminole Pratt Whitney Rd, #25-43
Loxahatchee, Florida 33470
attorney@ingergarcia.com;
serviceimglaw@gmail.com;
serviceIMGLaw@yahoo.com
Office: (954) 451-2426
Direct: (954) 394-7461
Fla. Bar No. 0106917

**Certificate of Service**

I HEREBY CERTIFY that, on this 5th day of December 2024, the foregoing was served upon all counsel of record using the CM/ECF system.

*/s/Inger M. Garcia, Esq.*
Inger M. Garcia, Esq.
Florida Litigation Group
Counsel for Defendants
7040 Seminole Pratt Whitney Rd, #25-43
Loxahatchee, Florida 33470
attorney@ingergarcia.com;
serviceimglaw@gmail.com;
serviceIMGLaw@yahoo.com
Office: (954) 451-2461
Direct: (954) 394-7461
Fla. Bar No. 0106917

12