**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:21-cv-61686-DPG**

**SECURITIES AND EXCHANGE COMMISSION,**

> **Plaintiff,**

**v.**

**THE MOVIE STUDIO, INC.,**
**and GORDON SCOTT VENTERS,**

> **Defendants.**

_____/

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANTS'**
**MOTION FOR RECONSIDERATION OF DE 156 REPORT AND**
**RECOMMENDATION ON SUMMARY JUDGMENT AND ORDER**

**I.      INTRODUCTION**

Plaintiff Securities and Exchange Commission ("the Commission" or "SEC"), files this Response to Defendants The Movie Studio ("TMS") and Gordon Scott Venters' ("Venters") Motion for Reconsideration of Report and Recommendation (the "Report") [ECF No. 156], and the Resulting Order Affirming and Adopting the Report [ECF No. 185] (the "Motion for Reconsideration").

On July 26, 2024, Magistrate Judge Strauss issued the Report recommending that the SEC's Motion for Summary Judgment be granted as to Count I of the Commission's Complaint which alleges that Defendants violated Section 5 of the Securities Act of 1933 ("Securities Act"). On September 17, 2024, this Court affirmed and adopted the Report's recommendation. ("Order Adopting") [ECF No. 185]. Defendants now move for reconsideration of the Report and Order Adopting relying on previously made arguments that they were exempt from Section 5's registration requirements. As before, Defendants' latest motion should be rejected as it fails to

raise new facts or evidence that merit reconsideration or show evidence that they qualified for an exemption. For these reasons, further explained below, the Court should summarily deny Defendants' Motion for Reconsideration.

## II.    BACKGROUND

This case involves the unregistered, fraudulent offering of securities of Defendant TMS. From approximately August 2016 to March 2021, TMS, a company that engages in film production, film distribution and content-streaming, and Venters, its President and Chief Executive Officer, issued materially misleading press releases regarding TMS's ownership, production, distribution, and licensing of films, to induce investments in TMS. As a result, from approximately April 2017 to December 2020, TMS and Venters raised at least $1,200,000 from at least 70 investors, in an unregistered securities offering, in violation of the securities laws.

On December 28, 2023, the SEC filed its Motion for Summary Judgment [ECF No. 107] and Statement of Material Facts in Support. [ECF No. 108]. Defendants filed their response to the Motion on February 21, 2024 [ECF No. 125]. On July 26, 2024, Magistrate Judge Strauss issued his Report recommending that summary judgment be entered as to the Section 5 claims and specifically finding that Defendants failed to provide sufficient evidence showing that an exemption to Section 5's registration requirements applied. The Report correctly found that the uncontroverted facts demonstrate that Defendants violated Section 5 of the securities laws by participating in an unregistered offering of securities.[1]

---

[1] Section 5(a) of the Securities Act makes it unlawful for any person, directly or indirectly, to use any means or instruments of transportation or communication in interstate commerce or of the mails to sell a security for which a registration statement is not in effect. *See* 15 U.S.C. § 77e(a). Similarly, Section 5(c) makes it unlawful to offer to sell a security through the mails or interstate commerce when a registration statement has not been filed with the Commission. *See* 15 U.S.C. § 77e(c); *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017). These registration provisions ensure that the investing public receives the necessary material information about their contemplated investment. *See SEC v. Platform Wireless Int'l Corp.*, 617 F.3d 1072,

On August 24, 2024, Defendants filed their Amended Objection to Magistrate Judge's Recommendation that Plaintiff's Motion for Summary Judgment be granted as to Count I of the Complaint. [ECF No. 171]. After a *de novo* review of the record, this Court affirmed and adopted the Report's finding that Defendants violated Section 5 of the Securities Act. [ECF No. 185].

Having had their arguments already rejected twice, Defendants' instant Motion for Reconsideration tries for a third time to overcome the undisputed evidence that Defendants sold securities without being registered in violation of Section 5, and that Defendants cannot establish a valid exemption to registration. As shown below, the Court should reject Defendants' arguments for a third time as well.

### III.   ANALYSIS

#### A.   Defendants' Arguments for Reconsideration Were Previously Made and Rejected

Defendants filed their Motion for Reconsideration pursuant to Fed. R. Civ. P. 60(b) purportedly due to "mistakes of counsel" and the Defendants' misunderstanding "in calculating the number of non-accredited investors." Although a mistake by a party or its attorney may serve as the basis for a motion for reconsideration, a "motion for reconsideration that presents no arguments that have not already been raised in opposition to summary judgment should be denied." *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). *See also Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (A motion for reconsideration cannot be used to "raise argument or present evidence that could have been raised prior to the entry of judgment"). This includes new arguments that were "previously available, but not pressed." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (*per curiam*); *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949,

---

1085-86 (9th Cir. 2010) (discussing importance of registration provisions to ensuring that accurate information reaches all investors).

957 (11th Cir. 2009). Motions for reconsideration are not "the proper vehicle for rehashing old arguments," *Resolution Trust Corp. v. Holmes*, 846 F.Supp. 1310, 1316 (S.D. Tex. 1994) (footnotes omitted), and are not "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D. Va. 1977).

Here, Defendants' Motion for Reconsideration should be denied on procedural grounds as it merely reasserts arguments already made in Defendants' Response to the Motion for Summary Judgment and in their Objections to the Report, which the Court found to be wanting. Indeed, the crux of Defendants' Motion for Reconsideration concerns the applicability of an exemption from Section 5 under Rule 506(b). Defendants argue they are entitled to a Rule 506(b) exemption from Section 5's registration requirements because they contend that TMS: 1) had less than 35 unaccredited investors during the relevant time-period and 2) provided those investors with the relevant financial records required to qualify for an exemption.

However, the Court need not dive into the substance of Defendants' arguments as they are simply a repeat of arguments previously made and specifically rejected by this Court and, therefore, not the proper subject of a Motion for Reconsideration. See *Backlund*, 778 F.2d at 1388; *Cover v. Wal-Mart Stores, Inc.,* 148 F.R.D. 294 (M.D. Fla. 1993)("a motion for reconsideration that presents no arguments that have no already been raised in opposition to summary judgment should be denied); *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) ("[it is an improper use of] the motion to reconsider to ask the Court to rethink what the Court already thought through - rightly or wrongly"); *Vill. of Wellington, Fla*., 408 F.3d at 763.

As noted in Judge Strauss's Report at p. 7, n. 5, Defendants' summary judgment response [ECF No. 125] discusses exemptions from registration from pages 16-21. Indeed, Defendants' response specifically addressed the exemption issue and made arguments nearly identical to those

made now in the Motion for Reconsideration. In their response, Defendants specifically argued that TMS "accepted less than 35 unaccredited investors" and "did provide them with the required financial statements" ECF No. 125. Response at 17. Defendants also argued that they provided "the required financial statements, such as certified statements through the emails, links to the financials, on the website and otherwise" and that they sent links containing hundreds of pages of certified financial statements while "taking reasonable steps to verify whether they were accredited." *Id*.

Importantly, Judge Strauss addressed these arguments in the Report. "It is evident from the parties' briefing and the record that what is in dispute [as to the Section 5 claim] is whether an exemption applies." Report at p. 5. In addition, Judge Strauss specifically analyzed the same Rule 506(b) exemption that Defendants now reassert, to wit: whether Defendants had a reasonable basis for believing that no more than thirty-five purchasers were non-accredited investors and whether Defendants provided an audited balance sheet (or similar financial documents) to any purchaser that is not an accredited investor. Report at pp. 9-11. Ultimately, Judge Strauss concluded that Defendants failed to point to evidence sufficient to allow a reasonable jury to conclude an exemption applies.

Defendants filed their Objection to the Report and argued a second time that TMS qualified for the 506(b) exemption. *See* Defendants' Objection [ECF No. 160]. Again, Defendants provided as "evidence" only Venters' Affidavit and testimony (virtually the same evidence Defendants provided in their response to the SEC's Motion for Summary Judgment). Again, the Court found Defendants' arguments and evidence insufficient to meet their burden of proof that an exemption should apply here. Order Adopting [ECF No. 185].

Now, Defendants raise nearly identical arguments and evidence in their Motion for Reconsideration, under the mistaken belief that repeating it for a third time will somehow succeed where they failed before. Accordingly, the Court should summarily deny the motion as it is procedurally improper as it presents no arguments that have not already been raised. *Z.K. Marine*, 808 F. Supp. at 1563; *Vill. of Wellington*, 408 F.3d at 763 (A motion for reconsideration cannot be used "to relitigate old matters").

### B. Defendants Have Not Provided Sufficient Evidence to Establish a Valid Exemption from Registration

Defendants' Motion for Reconsideration should also be denied on its merits as Defendants again fail to provide evidence sufficient to establish that an exemption applied to TMS' sale of securities. Defendants do not argue that the SEC failed to satisfy its burden on summary judgment of establishing its prima facie case under Section 5. Consequently, the burden of proof rests with Defendants to show that an exemption applied on these facts. *SEC v. Gen Audio Inc.,* 32 F.4th 902, 940 (10th Cir. 2022). *See also SEC v. Cavanaugh,* 445 F.3d 105, 111, n. 13 (2d Cir. 2006). Notably, registration exemptions are construed strictly to promote full disclosure of information for the protection of the investing public. *Cavanagh*, 445 F.3d at 115 n.13, *see also SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980).

Defendants attempt to show they qualified for an exemption under 17 C.F.R. § 230.506(b) more commonly referred to as Rule 506(b). "Under Rule 506(b), securities are exempt from registration if they are private offerings." *SEC v. Schooler*, 905 F.3d 1107, 1114 n.3 (9th Cir. 2018) (citing 15 U.S.C. § 77d(2)). "A security qualifies as a private offering if there are fewer than 35 non-accredited investors of securities in the offering, and each non-accredited investor has 'such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment.'" *Id.* (quoting 17 C.F.R. § 230.506(b)(2)). "If the

issuer sells securities under §230.506(b) to *any* purchaser that is not an accredited investor, the issuer shall furnish . . . [f]inancial statement information." *See* 17 C.F.R. §§ 230.502(b)(1), (2)(i)(B).

Here, Defendants have failed to demonstrate a genuine dispute of material fact regarding whether an exemption to registration applies. As stated in *GenAudio,* "[a] party resisting summary judgment cannot expect to rely on the bare assertions or mere cataloguing of affirmative defenses. The requirement of pointing to specific facts to defeat a summary judgment motion is especially strong when the nonmoving party would bear the burden of proof at trial, as these defendants would on the affirmative defenses they plead." *GenAudio,* 32 F. 4th at 941 (*quoting Harper v. Del Valley Broads, Inc.,* 753 F. Supp, 1076, 1090 (D. Del. 1990)). *See also Celeotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986) (noting that under Rule 56 "the nonmoving party [who] will bear the burden of proof at trial on a dispositive issue" must "go beyond the pleadings and by her own" record showing demonstrate a genuine dispute for trial). As the 10th and 7th Circuits have noted, summary judgment is the "put up or shut up" moment in a lawsuit." *See Gen Audio,* 32 F. 4th at 942 (*quoting Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1077 (7th Cir. 2016)).

Despite multiple opportunities to present evidence regarding how they could possibly qualify for an exemption under Rule 506(b), Defendants have utterly failed. Under Rule 506(b), a "safe harbor" under Section 4(a)(2) of the Securities Act,[2] a company can be exempted from the

---

[2] Section 4(a)(2) of the Securities Act provides an exemption from that Act's registration provisions for private offerings. *See* 15 U.S.C. § 77d(a)(2). "An offering is considered private only if limited to investors who have no need for the protection provided by registration." *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993); *see Lively v. Hirschfeld*, 440 F.2d 631, 632 (10th Cir. 1971). In assessing whether an offering is "sufficiently limited[,] courts focus on such factors as: (1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering." *Id.*; *see also Mark v. FSC Sec. Corp.*, 870 F.2d 331, 333 (6th Cir. 1989) ("several factors [that] are significant" in "determining whether a securities offering is exempt from registration under the general language of § 4[(a)](2)," including "the number of offerees" and "the manner of the offering").

registration requirements only by satisfying specific requirements, including all three of the following:

1) The company cannot use general solicitation or advertising to market the securities;

2) The company cannot sell its securities to more than 35 unaccredited investors and;

3) The company must provide all non-accredited investors with the financial information required to qualify for an exemption.

Here, Defendants have utterly failed to provide any evidence, much less sufficient evidence, to satisfy any of the above requirements to qualify for an exemption under Rule 506(b).

### 1. Defendants Do Not Qualify for An Exemption as They Used General Solicitation and Advertising to Market the TMS Securities

For Rule 506(b) safe harbor's exemption to apply, Defendants must show that they did not use general solicitation or advertising to market its securities. Rule 506's private placement exemption prohibits public solicitations for its exemption to apply. 17 C.F.R. §§ 230.502(b)(2), (c).  It specifically states that the issuer shall not "sell the securities by any form of general solicitation or general advertising including . . .any advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast." *Id.*

Thus, for any offering to be exempt under Rule 506(b), Rule 502(c) prohibits "any form of general solicitation or general advertising." 17 C.F.R. § 230.502(c). Advertising on publicly available websites to solicit investor interest constitutes a general solicitation and removes an offering from the Rule 506(b) exemption. *See, e.g., SEC v. Saxena*, 26 F. App'x 22, 23 (1st Cir. 2001) (*per curiam*) (affirming summary judgment where defendant advertised investments on website); *SEC v. Opulentica, LLC*, 479 F. Supp.2d 319, 328 (S.D.N.Y. 2007) (finding a general solicitation where defendants "solicit[ed] sales on their website").

Here, Defendants clearly do not qualify for an exemption as they engaged in a general solicitation, promoting their securities generally though the internet, press releases, You Tube, telephone calls, and at conferences. SEC Statement of Material Facts in Support of Summary Judgment, ECF No. 108 at ¶¶ 1, 5, 14, 15, 16, 34. Thus, the exemptions of Rule 506(b) clearly do not apply, and no further analysis is required.[3]

### 2. Defendants Have Not Presented Sufficient Evidence Showing That They Sold Securities to No More than 35 Non-Accredited Investors

The Court properly entered summary judgment on the Section 5 claims because Defendants failed to show that there was a genuine dispute of material fact regarding the number of non-accredited investors, which Rule 506(b)(2)(i) caps at 35. 17 C.F.R. 230.506(b)(2)(i).

The Report found, and Defendants concede, that to qualify for an exemption under 506(b)(2) they must show that they sold their securities to less than 35 non-accredited investors. In its Report, the Court specifically noted that Defendants provided "no record support for their contention that there were fewer than 35 non-accredited investors" where Defendants relied only on Venters' conclusory declaration that there were fewer than 35 non-accredited investors during the relevant time. Report at p. 10. Thus, the Report correctly found that such conclusory allegations were insufficient to find an exemption applied or to create an issue of fact on the Section 5 claim. *See* Report at 10 (*citing Bazemore v. Jefferson Cap. Sys., LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016)) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment").

---

[3] This argument was not specifically made by Defendants in the Motion for Reconsideration or in the Commission's Motion for Summary Judgment, so it is not addressed in the Report, but given the Defendants' argument that they are entitled to an exemption under 506(b), it is now appropriate for the Court to consider all the reasons why Defendants are not entitled to the 506(b) exemption. Importantly, even if the Defendants were to show that they had less than 35 non-accredited investors who received the proper required financial statements, they cannot show they were entitled to an 506(b) exemption because they engaged in a general solicitation to sell the private shares.

Defendants' Motion for Reconsideration adds nothing new regarding the number of non-accredited investors. To support their argument that TMS had fewer than 35 non-accredited investors, Defendants again rely on nothing more than an Affidavit of Defendant Gordon Venters, where he attaches an investor list and handwrites his opinion or guesses as to which investors were accredited and which were not. Defendants did not present any evidence that they collected information about each investor's accredited status or whether they conducted any due diligence to determine whether investors were accredited or otherwise sophisticated. Defendants did not produce completed forms or other evidence regarding the assets or net worth of each investor. Again, Venters' conclusory Affidavit and statement that he "vetted" investors without supporting documents do not constitute even "a scintilla of evidence" regarding each investor's accredited status or Defendants' reasonable belief regarding their status. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252-55 (1986). This failure of proof demonstrates that there was not sufficient evidence to create a triable issue regarding whether an exemption was available to Defendants.

### 3. No Evidence that Certified Financial Statements were Provided to Unaccredited Investors

Even if Defendants were to prove that they had less than 35 non-accredited investors, this alone is not enough to qualify for an exemption. Defendants admit that at least 32 investors were not accredited during the relevant period. Motion for Reconsideration at 3. Thus, to qualify for an exemption under Rule 506(b), Defendants are also required to establish that every unaccredited investor received from the issuer (here TMS) financial statements that were audited or prepared in accordance with generally accepted accounting principal (US GAAP) and contain the financial information required by paragraph b of Part F/S of Form 1-A registration statement. *GenAudio*, 32 F.4th at 940; 17 C.F.R. §§230.502(b)(1), (b)(2)(i)(B)(1)).

In their Response to the summary judgment motion, Defendants state that they provided "the required financial statements, such as certified statements through the emails, links to the financials, on the website and otherwise." [ECF No. 125] at 17. They did not, however, point to any evidence of same. As the Report at 11 states,

> What Defendants do not do, though, is explain what specific financials were provided to non-accredited investors, provide any proof that these specific financials were sent to those investors, or elaborate on how such financials were "certified." Nor do they attempt to explain how whatever they did provide satisfies § 230.502(b) – and thus Rule 506(b).

Defendants' latest Motion for Reconsideration does not correct these failures and merely repeats the same arguments (sometimes verbatim) that they provided non-accredited investors with "access to all of the The Movie Studio's certified financial statements" and directs the Court to Venters' Affidavit. Motion for Reconsideration at 11, ¶16. In his Affidavit, Venters states that Defendants provided to new investors, "links to certified balance sheets for every quarter and year" and by certified he was referring to his own "certification" that "based on [Venters] knowledge, the financial statements … fairly present in all material respects the financial condition" of TMS. Venters' Affidavit at ¶ 5. Venters explains that TMS would email prospective investors a link to the Movie Studio's financial statements on Yahoo!Finance and that those financial statements were taken from the financial information submitted to EDGAR and "vetted" by TMS's CPA. Venters explained that it was in this manner that potential investors were provided the "certified financial statement" of TMS prior to investment.[4]

---

[4] On page 10, ¶ 15 of their Motion, Defendants argue that the 10th Circuit's opinion in *GenAudio* appears inconsistent with what Defendants mischaracterize as "guidance for issuers" appearing on SEC.gov without providing a citation to the page of the website or other identifying information. Venters' Affidavit also repeats this mischaracterization calling the web page "the SEC's official description of the requirements of 506(b) exemption." Venters' Aff. at ¶ 7.

What is cited and attached to Venters' Affidavit appears to be from the SEC's website Investor.gov in its "introduction to investing basics" glossary section found at https://www.investor.gov/introduction-

Venters' Affidavit still suffers the same flaws as before and presents more questions than answers. Defendants still do not explain what specific financial statements were provided to non-accredited investors.[5] Defendants still do not provide an example of a financial statement, provide any proof that these specific financial statements were sent to those investors, or elaborate on how such financials were "certified." Because Defendants failed to provide an example of the financial statements it claims were provided to non-accredited investors it is impossible to determine whether such statements satisfy Rule 506(b). Nor do Defendants attempt to explain how links to vague information satisfies § 230.502(b) – and thus Rule 506(b). Defendants' failure-for the third time-to provide evidence to satisfy their burden of proof is fatal to their claim that they were entitled to an exemption from the registration requirements.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Motion for Reconsideration merely repeats already rejected arguments and does not repair the fatal flaws outlined in the Report. Thus, Defendants cannot show that an exemption to Rule 506(b) applies and the Motion for Reconsideration should be summarily denied.

August 13, 2025                                    Respectfully submitted,

                                                       By: s/<u>Alise Johnson</u>

---

investing/investing-basics/glossary/rule-506-regulation-d. It is found in the glossary section of Investor.gov which is a portion of the SEC website that explains basic investment terms to investors. Nowhere on the SEC's website is it identified as "guidance for issuers" or as an "official description of the requirements of the 506(b) exemption." Nor should it be interpreted as such. As the SEC website explains in multiple places, the website is not a substitute for any rule itself, and investor education and alerts, has no legal force or effect, does not alter or amend applicable law, and it creates no new or additional obligations for any person.

[5] Reasonable steps to verify that purchasers are accredited include but are not limited to reviewing the purchaser's W-2, for 1099, or bank statements; reviewing consumer reports from a consumer reporting agency and obtaining written confirmation from a registered broker. *See SEC v. Early,* 751 F.Supp.3d 1044 (S.D. Ca. Sept. 30, 2024)(citing 17 C.F.R. 230.506(c)(2)(ii)(A)-(C).

Alise Johnson, Esq.
Senior Trial Counsel
Fla. Bar No. 0003270
Direct Dial: (305) 982-6385
Email: johnsonali@sec.gov

Pascale Guerrier, Esq.
Senior Trial Counsel
Fla. Bar No. 22590
Direct Dial: (305) 982-6381
Email: guerrierp@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154